UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
**FILED**
MAY 1 8 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2005-149 - WOB

GLORIA FRYE                                                PLAINTIFF

VS.                    **OPINION AND ORDER**

UNUM LIFE INSURANCE
COMPANY OF AMERICA
                                                           DEFENDANT

This matter is before the court on the motion for judgment on the administrative record of the plaintiff (Doc. 8) and the defendant's brief in support of administrative decision (Doc. 14).

**FACTS**

In October, 1987 plaintiff Gloria Frye, now 57 years old, began working for Fisher Scientific International, Inc. (ADM 1469). She began working in the warehouse, but then moved to an office position. Her last assignment was as an inventory control clerk, and it consisted of 60% office work and 40% warehouse work, operating a cherry picker. (ADM 1256-55).[1]

As part of her benefits, she was a participant in a long-term disability ("LTD") benefits plan Unum Life Insurance Company

---

[1] The administrative record has been bate stamped from higher to lower number. Thus, the court's reference to the record may appear backward, but reflects the chronological order of the documents.

of America ("Unum") issued to Fisher Scientific ("the Plan").

The Plan states, in part:

You are disabled when Unum determines that:

- you are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
-you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

(ADM 1433).

Plaintiff worked until March 27, 2002 and has not returned since that date. Plaintiff left work as a result of pain caused by acute deep vein thrombosis and ongoing lower back difficulties.

Following the 180-day elimination period, Unum paid disability benefits to plaintiff for 24 months under the "your regular occupation" provision. After 24 months of payments, the Plan's definition of "disabled" changed from inability to perform "your regular occupation" to inability to perform the duties of any "gainful occupation for which you are reasonably fitted by education, training or experience." (ADM 1433).

In September 2004, the definition change went into effect. Unum stopped paying benefits because it found that the plaintiff could perform at least two sedentary occupations, customer complaints clerk and procurement clerk, and, therefore, did not meet her new definition of disability. (ADM 279).

In its letter denying further benefits, Unum acknowledged that the plaintiff suffered from psychiatric issues that would impact her functional capacity. Unum stated that her level of function did not allow for activities beyond self-care. Unum concluded, however, that no further benefits were payable because the Plan had a 24-month limit for benefits payable for disability due to mental illness and she had already received 24 months of payments. (ADM 279).

The plan states, in part:

> Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24 months.

Unum explained that the payments made to plaintiff from October 2002 through September 2004 counted toward the 24 month limit for mental illness. (ADM 279).

The plaintiff disputes Unum's finding that she has the capacity to perform sedentary work. In addition, she argues that the 24-month limit for benefits for mental illness has not been exhausted because the benefits she received were for her vein thrombosis and ongoing lower back pain, not mental illness. Plaintiff seeks a finding from this court that Unum's decision was arbitrary and capricious.

**ANALYSIS**

**A. ERISA**

It is uncontested that this case is governed by ERISA. The parties also agree that the court must determine whether Unum's decision to deny extended benefits was arbitrary and capricious. The plaintiff argues, however, that because Unum was both the claims administrator and the payor, this potential conflict of interest must be considered by the court in determining whether the defendant was arbitrary and capricious.

The Sixth Circuit has held:

> We have recognized that a conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and pays those benefits. Gismondi v. United Techs. Corp., 408 F.3d 295, 299 (6th Cir. 2005); see Killian, 152 F.3d at 521 (observing "there is an actual, readily apparent conflict, . . . not a mere potential for one" where a company both funds and administers an LTD policy, because "it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits"). In this case, because defendant maintains such a dual role, "the potential for self-interested decision-making is evident." Univ. Hosps. Of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 846 n. 4 (6th Cir. 2000). However, this conflict of interest does not displace the arbitrary and capricious standard of review; rather, it is a factor that we consider when determining whether the administrator's decision to deny benefits was arbitrary and capricious. Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston, 419 F.3d 501, 506 (6th Cir. 2005) The reviewing court looks to see if there is evidence that the conflict in any way influenced the plan administrator's decision. Carr v. Reliance Standard Life Ins. Co., 363 F.3d 604, 606 n. 2 (6th Cir. 2004).

Evans v. Unumprovident Corp., 434 F.3d 866, 876 (6th Cir. 2006). See also Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir.

4

1998).

Accordingly, if the administrator's decision was rational in light of the plan's provisions and there is no evidence that the conflict influenced that decision, the decision will be upheld. Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 456-57 (6th Cir. 2003).

### B. Unum Is Not Bound By The SSA's Ruling

Plaintiff argues in her motion that the "wisdom, experience and expertise of SSA expressed in its regulations, when relevant ought not be ignored." In her reply brief, the Plaintiff concedes that Unum is not bound by the decision of the Social Security Administration (SSA). Whitaker v. Hartford Life and Acc. Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005). Instead, she argues that Unum should have addressed, as the SSA regulations do, the issue of plaintiff's advanced age, 57, and its effect on her ability to engage in gainful employment. She points to the report of SSA's vocational expert who opined that her age significantly affects her ability to engage in gainful activity if she has a severe impairment that precludes her from doing medium strength capacity work. Plaintiff also cites the SSA regulations that provide age should be considered a limiting factor for claimants that are 55 and over. 20 C.F.R. § 1563(e).

The Sixth Circuit, however, explained that an ERISA administrator is not bound by SSA determinations, stating:

5

> We hold that an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan. As the Supreme Court noted in Nord [Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)], entitlement to Social Security benefits is measured by a uniform set of federal criteria. But a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria.

Whitaker, 404 F.3d at 949. Accordingly, the Sixth Circuit recognized that the federal criteria that guides SSA rulings are not applicable in ERISA matters. See also Hurse v. Hartford Life and Acc. Ins. Co., 77 Fed. Appx. 310, 317-18 (6th Cir. 2003).

The plaintiff argues that the administrator acted arbitrarily and capriciously by not offering a reasonable explanation for its failure to consider the plaintiff's age. There is no evidence that the administrator did not consider her age. In fact, the physicians that provided reports in this matter all had this information available to them before reaching their conclusions and in the preparation of their reports.

In Hurse, the Sixth Circuit held that the administrator is not required to explain why it did not adopt the findings of the SSA. Id. This court finds that the administrator is similarly not required to explain why it did not consider SSA regulations. Thus, the court finds that the administrator was not required to consider the SSA regulations regarding age in making its disability determinations.

6

### C. Unum's Determination That Plaintiff's Physical Condition Did Not Meet the "Any Gainful Occupation" Definition was Not Arbitrary and Capricious.

In order to qualify for benefits after the 24-month "your regular occupation" period, the plaintiff was required to prove that her condition rendered her unable to perform "any gainful occupation."

On October 2, 2002, plaintiff's primary care physician, Dr. Ruetman, submitted a statement reporting that the plaintiff had been disabled from any occupation from March 27, 2002 to May 5, 2002 as a result of chronic low back pain, degenerative disk disease and spinal stenosis. (ADM 1293). Dr. Ruetman went on to state that the plaintiff should stay off work until Dr. Simons, her pain management physician, released her. (Id.).

On October 28, 2002, Dr. Simons completed a functional assessment and opined that the plaintiff could occasionally lift 10 pounds and should not lift more than 5 pounds frequently. He stated that she could not stand or sit for more than one hour each out of an eight-hour work day. He also found that she should never climb, balance, stoop, crouch, kneel or crawl. (ADM 1265-63).

On October 30, 2002, plaintiff's chiropractor, Dr. Kocan, also completed a functional assessment. (ADM 1235-33). Dr. Kocan opined that plaintiff's physical abilities were significantly restricted due to her degenerative and discogenic

7

changes at L4/5 and L5/S1. (Id.). He stated that she should not lift or carry any weight on a frequent basis and should lift/carry less than 10 pounds on an occasional basis. (Id.). He also opined that she could stand and/or walk a total of 3-4 hours in an eight hour day. (Id.). Dr. Kocan stated that because pressure surrounding the disc bulge and nerve impingement may further exacerbate plaintiff's symptoms, she could sit for only a half-hour and should not sit without interruption for any time period. (Id.). He also limited all postural activities, except she could occasionally balance. (Id.).

Unum had its doctors and medical consultants review these reports as well as plaintiff's medical records. Unum found that plaintiff's medical records did not provide adequate support for the doctors' diagnoses. Accordingly, Unum asked Dr. Wunder, a physical medicine and rehabilitation specialists, to perform an independent medical examination. (ADM 36).

On May 5, 2003, Dr. Wunder examined the plaintiff. Dr. Wunder concluded:

> Based upon my findings, I believe the patient would be capable of sedentary to light job duties and tasks from an orthopedic standpoint. It appears from her records that she does have significant anxiety and depression, which also may affect her work performance. She did cry intermittently during the exam.
>
> The patient appears to be capable of clerical and sedentary jobs at least. If her depression was under adequate control, she may be able to advance to light job duties and tasks. I do not believe she could perform her prior job duties and tasks in the cherry picker due to the

8

>       prolonged standing and the effect this would have on her
>       post phlebitic syndrome and low back.

(ADM 1021).

Dr. Wunder's report was reviewed by Unum's medical consultants and Unum determined that the plaintiff was entitled to benefits under the "your regular occupation" period. (ADM 22).

On November 25, 2003, Dr. Ruetman submitted an updated Estimated Functional Abilities Form stating that he did not believe the plaintiff would ever be able to return to work, but did not support his statement with any medical documentation. (ADM 791-790).

In January 2004, in connection with plaintiff's request for a disability waiver of premiums under a life insurance policy, Unum had a rehabilitation counselor review the file to determine if there were any occupations that plaintiff could perform given her education and work history. (ADM 749-748). The counselor found that the plaintiff could perform the sedentary jobs of customer complaint clerk and procurement clerk. (Id.). She also identified four clerical positions in the light category. (Id.).

In March 2004, Unum notified the plaintiff that her claim was being evaluated under the "any gainful occupation" definition because the new disability definition would go into effect in September 2004. (ADM 731-30). Unum explained that it would consider any additional information she provided to support her

9

claim. (Id.).

In August 2004, Unum performed a review of the file, including updated records from Dr. Simons and Dr. Kocan. Unum concluded that Dr. Wunder's evaluation remained the latest musculoskeletal assessment and that there was no new information to cast doubt upon his conclusions. (ADM 758-54). Accordingly, Unum notified the plaintiff that she no longer met the definition of disabled since she could perform various gainful occupations. (ADM 662-57).

The plaintiff appealed the termination of benefits and submitted a report from her psychologist and vocational expert, Dr. Roebker. (350-42).

Dr. Roebker found that plaintiff's physical restrictions precluded her from both light and sedentary work. First, he found that she was precluded from performing light strength work because she could not lift more than 10 pounds or stand/walk for more than a short time period. He stated that typically light work required a person to lift more than 10 pounds and be able to stand/walk for six hours out of an eight hour work day. (Id.).

Second, Dr. Roebker found that the plaintiff was also precluded from performing sedentary work because it typically requires that a person sit for six hours out of an eight-hour day, and her medical records supported a finding that she could not sit for a prolonged period because of back pain and clotting

10

in her legs. In addition, he found that the plaintiff has an impairment of the right hand that would also limit sedentary activities as they typically require good bilateral handling (ADM 343).

Lastly, Dr. Roebker opined that plaintiff's significant psychological impairments and limitations also precluded gainful employment. He found that her severe depression and anxiousness would preclude her from being able to work in any position that had time/productivity demands or other sources of stress. She would also be limited in her ability to make decisions and concentrate. (Id.). Dr. Roebker concluded that the plaintiff would be unable to perform any work, even in a sedentary occupation.

Unum sent this new report to its staff medical consultants for additional medical review. Richard Cole, RN, opined that:

> "the claimant has significant cervical and lumbar degenerative changes w/o true radiculopathy, and recurrent DVT. She would therefore not [be] able to tolerate any one activity for more than a short period of time, should avoid vibration, overhead activity, bending, or more than occasional light lifting. While [plaintiff] may be capable of tolerating at least part time sedentary activity, and she does not claim impairment from a psychiatric condition, the combination of her medical and psychological conditions may preclude her from being functional in a work environment.

(ADM 320-319).

On March 9, 2005, Unum's medical director, Dr. Hill, reviewed Nurse Cole's report and found it accurate. He stated that he believed that the plaintiff's level of function did not

11

allow for activities in excess of self-care at this time. He believed with adequate and appropriate care for her psychological somatoform pain disorder she could improve to allow for some level of work.

He further assessed her musculoskeletal condition and found that physically she was restricted to occasional standing/walking/stair climbing, no static positioning without the ability to shift position, no lifting greater than 10 pounds, no strenuous exertion, no push/pull greater than 20 pounds, no highly repetitive trunk motions and very limited positional activities. (ADM 287-86).

On March 21, 2005, Unum affirmed its termination of benefits and explained that although it found the plaintiff disabled for mental illness, she had exhausted these benefits and, therefore, her disability benefits could only be continued if her physical condition rendered her disabled from any gainful occupation. Unum then relied on Dr. Hill's assessment of the plaintiff's limitations in concluding that the plaintiff's physical condition would not preclude her from performing the sedentary, gainful occupations of Customer Complaints Clerk and Procurement Clerk. (ADM 281-76).

The court finds that Unum's reliance on Dr. Hill's restrictions as support for a finding that the plaintiff can physically perform the duties of a gainful occupation in a

12

sedentary capacity is not arbitrary and capricious. See <u>McDonald v. Western-Southern Life Ins. Co.</u>, 347 F.3d 161, 169 (6th Cir. 2003)(not arbitrary and capricious for administrator to rely on one doctor's assessment over another). See also <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003)(plan administrators not obligated to accord special deference to opinions of treating physicians). Dr. Hill's assessment was supported by the medical records and other assessments.

Specifically, Dr. Wunder had opined, after conducting an IME, that although the plaintiff could not perform her regular occupation, she could perform sedentary to light job duties from an orthopedic perspective. There is no doubt that the plaintiff suffers from pain in her back and neck. The restrictions of occasional walking/standing and the ability to shift position as needed would accommodate her limitations in a sedentary occupation. Accordingly, Unum's determination that the plaintiff's physical condition did not meet the definition of "any gainful occupation" was not arbitrary and capricious.

### D. Unum's Determination that Plaintiff Had Exhausted Her Mental Illness Benefits Was arbitrary and Capricious.

Unum concedes that the claimant is disabled due to mental illness. (Doc. 14. p. 14). It argues, however, that plaintiff has used up the 24-month limit for disability caused by mental illness because she has already received 24 months of disability benefits, albeit for physical problems. Unum cites two cases in

13

support of its argument. See <u>Hurse v. Hartford Life & Acc. Ins. Co.</u>, 77 Fed. Appx. 310 (6th Cir. 2003); <u>Estep v. Continental Cas. Co.</u>, Case No. 7:03-CV-379, 2005 WL 3234329, *6 (E.D. Ky. Nov. 30, 2005) (J. Caldwell). Both cases, however, are distinguishable from the case at bar.

In <u>Estep</u>, the policy stated that the plan did "not cover any loss caused by, contributed to, or resulting from . . . Disability beyond 24 months after the Elimination Period if it is due to a Mental Disorder of any type." Thus, under the terms of the policy, the plaintiff was not entitled to extend his benefits beyond twenty-four months after the elimination period if the disability is for mental illness regardless of when he became disabled as a result of the mental illness.

In the case at bar, however, the policy language states "Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24 months." It does not limit mental illness benefits to the 24 months after the elimination period. Instead, a reasonable reading of the provision provides that the insured is limited to 24 months of benefits for mental illness from the time she is found to be disabled as a result of that mental illness.

<u>Hurse</u> is also distinguishable from the case at bar. In <u>Hurse</u>, the plaintiff suffered from stroke-like symptoms and there

14

was an ongoing issue from the beginning of the payment of benefits as to whether he suffered from mental illness or organic brain damage. The plaintiff received 24 months of benefits under the "your occupation" definition. Thereafter, the insurer denied further benefit payments although it admitted that the plaintiff was disabled because of mental illness.

The insurer's denial of continued benefits was based on its finding that the plaintiff did not meet the "any occupation" definition and he had already exhausted his 24 months of benefits for mental illness. The court found that the insurer relied on significant medical documentation in determining that the plaintiff's disability stemmed from psychological factors, not an organic brain condition. Therefore, the court held that the insurer's finding that the plaintiff had exhausted his 24-month mental illness benefits was not arbitrary and capricious.

In the case at bar, the plaintiff's mental health was not a significant factor in her receipt of benefits under the "your regular occupation" benefits. A review of the administrative record demonstrates that Unum initially approved benefits because the plaintiff suffered from deep vein thrombosis and back pain and could not physically perform her "regular occupation." In its letter of March 21, 2005, Unum outlined the plaintiff's impairments:

> The available medical records indicate that Ms. Frye originally stopped working at her occupation of Inventory

15

Clerk on March 27, 2002 due to symptoms associated with deep vein thrombosis (DVT). We understand that your client was under treatment for worsening low back pain and right lower extremity pain that improved with an epidural injection just prior to her date of disability. The records further indicate that thrombosis resolved by early May 2002 and that a recurrence in March 2003 resolved the following April.

Your client's treatment has focused mainly on her back condition. A January 2002 magnetic resonance imaging study (MRI) indicates slight worsening of discogenic changes since a 1998 study, results showing moderate to marked facet changes at L3-4, and a small protrusion stated to contact the S1 nerve roots. Lumbar stenosis is indicated as borderline at L4-5 and mild at L5-S1. Electrodiagnostic testing reveals a right S1 radiculopathy, c/w MRI results, but exams are inconsistent for radiculopathy. We have concluded, in consultation with our medical department, that it is reasonable that Ms. Frye has some nerve root irritation without actual compression that would account for inconsistencies on exam.

We note that there is evidence of right carpal tunnel syndrome on electrodiagnostic testing obtained in August 2002, clinical exams do not support such a finding.

We also note that there are significant degenerative cervical changes (spondylosis) on imaging, with foraminal stenosis and cord displacement, though exams and electrodiagnostic testing do not support upper extremity radiculopathy, and myelopathy is not well demonstrated.

. . .

These medically-supported restrictions and limitations, based upon your client's physical condition would not preclude her from performing the sedentary, gainful occupations identified in the denial letter of August 27, 2004: Customer Complaints Clerk and Procurement Clerk.

As noted above, we recognize that your client has psychiatric issues which impact her functional capacity. We note that she does not appear to have been receiving behavioral health treatment. However, behavioral health impairment is supported by available medical records. Specifically, in the Independent Medical Examination of May 2003, your client reported capacity at a sedentary level but demonstrated symptom magnification on exam. The examiner

>     opined capacity at sedentary to light, but noted potential
>     for Ms. Frye's anxiety and depression to impact her work
>     capacity. In the disability assessment in December 2004,
>     overt pain behavior and somatic preoccupation was noted.
>     Specifically, Dr. Roebker indicated that somatoform disorder
>     and the specific diagnosis of pain disorder with
>     psychological and medical factors explain your client's
>     difficulties in function from a psychiatric perspective. We
>     note in consultation with our medical department that Dr.
>     Roebker's interpretation of the test results and diagnosis
>     were consistent with the medical record indicating multiple
>     additive pain complaints, symptoms on exam in excess of
>     objective findings. . . .

(ADM 281-276).

The court finds that it is disingenuous for Unum to try to boot strap its current finding that plaintiff is disabled as a result of mental illness to its prior disability determination. The record is clear that although physicians noted some concerns regarding plaintiff's mental health prior to the original disability determination, it was not until Unum was evaluating claimant's continuation of benefits and upon review of the December 2004 assessment that Unum began focusing on claimant's mental illness.

As discussed above, the policy language limits benefits for disabilities due to mental illness to 24 months. (ADM 1427). Unum approved claimant's "your regular occupation" benefits upon finding that the claimant's physical condition precluded her from performing her duties in the warehouse. At the time Unum approved the claim, claimant's mental condition was not a significant factor in the disability determination.

17

Accordingly, the court finds that the claimant has not received any benefits for mental illness and that Unum's denial of benefits on the basis that she had exhausted her mental health benefits was arbitrary and capricious. The plaintiff is entitled to a continuation of benefits under the "any gainful occupation" definition for 24 months, the expiration of the mental illness benefit limitation.

Therefore, the court having been otherwise sufficiently advised,

IT IS ORDERED that plaintiff's motion for judgment on the administrative record (Doc. #8) be, and it is, hereby granted. Unum is obligated to continue plaintiff's benefits under the "any gainful occupation" for 24 months. The parties shall submit a joint final judgment to the court within ten (10) days of the date of this order.

This _15TH_ day of May, 2006.

_William O. Bertelsman_

WILLIAM O. BERTELSMAN, JUDGE